# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANDA YVONNE REYES, | Case No. 1:16-cv-01668-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On November 2, 2016, Plaintiff Wanda Yvonne Reyes ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted,

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born on December 4, 1962, completed the tenth grade, and previously worked as a medical receptionist, phlebotomist, and a community health technician. (Administrative Record ("AR") 17–18, 34–38, 244, 249.) On December 17, 2012, Plaintiff filed claims for DIB and SSI payments, alleging disability beginning on July 28, 2009, due to problems in her back and neck. (AR 13, 15, 239, 243.)

### A. Relevant Medical Evidence[3]

#### 1. Sierra View District Hospital

In July 2009, Plaintiff presented to the emergency department complaining of pain to her left knee and ankle due to a fall. (AR 478–87.) An x-ray of her knee showed moderate osteopenia and moderate knee effusion, but no acute fracture. (AR 479.) Plaintiff complained of back pain due to a fall in March 2010. (AR 456–74.) She was prescribed Vicodin and Motrin for pain. (AR 457.)

On July 15, 2011, Plaintiff presented to the emergency department with "chronic pain syndrome." (AR 436.) An MRI performed that same day of Plaintiff's lumbar spine showed degenerative disc disease at the L3–4 and L5–S1 levels, and a "minimal, 1.0 mm central right paracentral disc bulge" at the L5–S1 level, "contiguous with the right S1 nerve root." (AR 331–332, 437–438.)

On April 18, 2014, Plaintiff reported sustaining a fall at a store and hitting her head. (AR 414–32.) She reported to the emergency department with symptoms of headache, back pain, and dizziness and underwent CT scans of her head, lumbar spine, and thoracic spine. (AR 414, 422–25, 431.) The CT scan of her head was normal. (AR 422.) Plaintiff's lumbar spine CT scan showed moderate osteopenia, satisfactory alignment of the lumbar vertebral bodies, and no lumbar fracture or dislocation. (AR 424.) The CT scan of her thoracic spine showed moderate osteopenia, satisfactory alignment of the thoracic vertebral bodies, and no thoracic fracture. (AR

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)
[3] As Plaintiff's assertion of error is limited to the ALJ's assessment of the opinion of Dr. Emmanuel Fabella, M.D., only evidence relevant to this argument is set forth below.

2

425.)

### 2. Family Healthcare Network

In January 2012, Plaintiff presented for a follow up appointment for pain medication. (AR 365–67.) She reported "doing well," and was given a refill for Norco. (AR 365–66.) Plaintiff also reported taking Meloxicam. (AR 365.) Plaintiff returned to receive refills of Norco in February and March 2012, and stated she continued to be "doing well." (AR 368–74.)

Plaintiff complained of "chronic back pains" in April 2012, which she described were "getting worse and debilitating." (AR 375.) Plaintiff reported that she underwent physical therapy but the pain got worse. (AR 375.) On examination, Plaintiff had limited range of motion in her lower back. (AR 376.) She was given a prescription for Norco. (AR 376.) In May 2012, Plaintiff reported having "new muscle spasm in the back." (AR 377.) The treating physician noted a "[p]ermanent deformity" in Plaintiff's back, but no palpable muscle spasm. (AR 378.)

At a medication refill appointment in July 2012, Plaintiff stated that her back pain was "getting worse." (AR 386.) The treating physician noted that Plaintiff was "crying and need[s] to change medication." (AR 386.) Plaintiff was provided prescriptions for Norco and Soma. (AR 387.) In August 2012, Plaintiff presented at her follow up appointment for back pain and medication refill, at which she complained of pain "on the back of the neck towards the head." (AR 389.) She was given refills for Norco and Soma and an MRI was ordered. (AR 390–91.)

An MRI of Plaintiff's cervical spine was performed on September 8, 2012. (AR 327–30.) The scans showed (1) straightening of the cervical spine that "may be due to muscle spasm"; (2) moderate spondylosis of the mid-cervical spine; (3) 1–2 mm disc osteophyte complex causing partial narrowing of the thecal sac at C4–5 and C5–6 levels; and (4) 1–2 mm disc osteophyte complex causing partial narrowing of the thecal sac and partial flattening of the spinal cord. (AR 329.)

Plaintiff returned for a prescription refill in October 2012 and complained of lower back pain. (AR 402.) In addition to Norco and Soma, the treating physician prescribed Meloxicam. (AR 403.) Plaintiff attended another prescription refill visit in November 2012, at which she complained of pain in her low back and left knee. (AR 405.) Her prescriptions for Norco and

Soma were refilled. (AR 406.)

Plaintiff presented for prescription refill visits on a monthly basis from January to May 2013. (AR 352–63.) Between January and March 2013, Plaintiff reported myalgias and arthralgias but "[n]o back pain." (AR 361, 358, 355.) In May 2013, Plaintiff again reported back pain and muscle spasms. (AR 352.) She received refills of Meloxicam, Norco, and Soma. (AR 353.) Plaintiff complained of upper back and elbow pain in June 2013. (AR 349.)

Following examination by consulting physician Emmanuel Fabella, M.D. (*see infra*), Plaintiff continued to complain of back pain in July and August 2013 at her prescription refill visits. (AR 343–48.) In September 2013, the treating physician noted that Plaintiff had polyneuropathy. (AR 528.)

Plaintiff continued to attend prescription refill visits on a monthly basis from October 2013 to October 2014 for Norco, Soma, and sometimes Meloxicam. (AR 498–527.) She reported back pain at those visits in October 2013 (AR 524, 526) and November 2013 (AR 522). In January 2014, Plaintiff indicated that Neurontin was helping cope with the pain, and her examination had normal findings. (AR 518–19.) In February 2014, Plaintiff complained that her lower back pain was "getting worse," but her examination produced normal findings. (AR 516.) She also complained that her wrist was swollen and could "hardly move" due to pain in March 2014, but her examination was normal. (AR 514.) In April 2014, Plaintiff's examination was normal, yet she complained that "[t]he pain on the upper back and shoulder is getting worse." (AR 512.)

In May 2014, following a visit to Sierra Vista District Hospital due to a fall on April 18. 2014 (*see supra*), Plaintiff continued to complain that her back and shoulder pain were "getting worse." (AR 508.) Her examination was normal. (AR 508.) From June to October 2014, Plaintiff complained of increased pain in her back and shoulder and received refills of Meloxicam, Norco, and Soma. (AR 498, 500, 502, 504, 506.) Her physical examinations were all normal. (AR 498–500, 502–504, 506.) In October 2014, Plaintiff complained of pain in her left knee, elbow, and wrist, in addition to her upper back and shoulder; however, examination findings were normal. (AR 498.)

4

//

### 3. Consultative Examiner Emmanuel Fabella, M.D.

On June 4, 2013, internist Dr. Fabella reviewed Plaintiff's MRI results and office notes from Family Health Care Network and conducted an internal medicine evaluation. (AR 336–41.) Plaintiff complained of neck and back pain. (AR 336.) She reported the neck pain as frequent, sharp, throbbing, with radiation the posterior neck, that is moderate to severe and "worsened by virtually all neck movements." (AR 336.) Plaintiff's low back pain was also reported as frequent, sharp, moderate to severe, with radiation down to her entire left leg. (AR 336.) She complained that she cannot sit on her left buttock and has difficulty sitting on the toilet. (AR 336.) Plaintiff reported she cannot sit more than 15 minutes at a time. (AR 336.) According to Plaintiff, she could only stand for 10 minutes and could walk one to two blocks. (AR 336.) She stated she could not lift moderate weights nor stoop fully. (AR 336.)

Dr. Fabella observed Plaintiff "appeared to be uncomfortable and in pain even while sitting on the examination table and tended to not put pressure on her left buttock and often had to shift her weight." (AR 338.) Dr. Fabella also noted that Plaintiff "often had to stand up to relieve pain in the lower back." (AR 338.) Plaintiff had a "slow gait" but her balance was preserved and she was able to walk on her toes. (AR 338.) Examination of Plaintiff's cervical spine showed "mild to moderate paralumbar muscle spasm." (AR 339.) Plaintiff had no cervical spine or paracervical tenderness, but Dr. Fabella observed prominent decrease in range of motion, with lateral flexion decreased bilaterally to 20 degrees, lateral rotation decreased bilaterally to 30 degrees, and full extension and flexion associated with cervicalgia as well. (AR 339.) Dr. Fabella also noted that full abduction of Plaintiff's shoulders caused cervical pain as well. (AR 339.)

Regarding Plaintiff's lower back, Dr. Fabella observed paralumbar muscle spasm and tenderness. (AR 339.) Plaintiff exhibited "decreased range of motion with forward flexion of only 70 degrees achieved," and she could not squat. (AR 339.) Plaintiff's straight leg raising test was negative. (AR 339.) Her range of motion in her shoulders, elbows, wrists, hips, knees, and ankles was normal. (AR 339.) Plaintiff had normal "5/5" grip strength and normal muscle bulk

and tone. (AR 340.) Dr. Fabella's impression was that Plaintiff had "[s]evere cervicalgia, discogenic with associated osteoarthritis as well as evidence of central spinal stenosis by MRI"; "[l]ow back pain, discogenic and associated with osteoarthritis as well as, clinically with evidence of sciatica, but without MRI evidence of neural foraminal or lumbar spinal central stenosis"; and "[m]oderate, chronic and persistent asthma." (AR 340.) Her range of motion in her shoulders, elbows, wrists, hips, knees, and ankles was normal. (AR 339.)

Dr. Fabella assessed Plaintiff's physical residual functional capacity ("RFC")[4] and opined that Plaintiff was limited to (1) lifting and carrying less than 10 pounds frequently and 10 pounds occasionally; (2) walking or standing less than four hours of an eight-hour day; (3) sitting for 15 minutes at a time, after which a break is required; (4) climbing, balancing, kneeling, crawling occasionally; (5) occasionally walk on uneven terrain; (6) avoiding climbing ladders and working with heights; and (7) avoiding cold exposure. (AR 340.) Dr. Fabella found no limitations on hearing and seeing or manipulative activities. (AR 340.)

### 4. State Agency Physicians

On July 12, 2013, I. Ocrant, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's RFC and found that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing/pulling with the upper extremities. (AR 82, 94.) Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 82–83, 94–95.) Plaintiff had limited right and left overhead reaching, but unlimited handling, fingering, and feeling. (AR 83, 95.) Dr. Ocrant found no visual, communicative, or environmental limitations, noting that "[a]sthma precautions gratuitous in light of ongoing smoking." (AR 83, 95.)

//

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Upon reconsideration on September 6, 2013, another Disability Determinations Service medical consultant, C. Bullard, M.D., affirmed Dr. Ocrant's RFC findings. (AR 108–10.) Dr. Bullard discounted Dr. Fabella's opinion, finding that it relied heavily on Plaintiff's subjective reporting of symptoms and limitations and that the "totality of the evidence does not support the opinion," and that the opinion is an "overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (AR 110.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on July 17, 2013, and again on reconsideration on September 6, 2013. (AR 10, 123–27, 137–46.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 147–56.) At the hearing on November 21, 2014, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 31–61.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as (1) a phlebotomist, Dictionary of Operational Titles (DOT) code 079.364-022, which was light exertional work, with a specific vocational preparation (SVP)[5] of 3, performed as heavy; (2) a medical laboratory technician, DOT code 078.38-041, which was light exertional work, SVP 5, and light as performed; (3) a receptionist, DOT code 237.367-038, which was sedentary exertional work, SVP 4, and medium as performed; (4) medical assistant, DOT code 079.362-010, which was light exertional work, SVP 6, and medium as performed; and (5) community program aid, DOT code 195.367-010, which was light exertional work, SVP 3, and medium as performed. (AR 63–66.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with her past jobs. (AR 67.) The VE was also to assume this person is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; sitting, standing and/or walking for six hours in an eight-hour workday; her ability to push and pull with the use of a right hand control is limited; and she is limited to only occasional overhead reaching with the left and

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

balancing, stooping, kneeling, crouching, crawling, and climbing occasionally. (AR 67.) The VE testified that such a person could perform Plaintiff's past relevant work as a phlebotomist as per the DOT; could perform the laboratory technician job both per the DOT and as performed; could perform the receptionist job as per the DOT; could perform the medical assistant job as per the DOT but not as performed; and could perform the community aide position as per the DOT but not as performed. (AR 68.) The VE testified that Plaintiff could also perform other light, unskilled work such as a sales assistant, DOT code 299.677-010; an office helper, DOT code 239.567-010; and a counter clerk, DOT code 249.366-010. (AR 68.) The ALJ asked a follow up question based on the first hypothetical worker but who was limited to standing and/or walking for two hours out of an eight-hour workday; sitting for six to eight hours; having occasional exposure to humidity, wetness, dust, odor, fumes, pulmonary irritants, extreme cold, or vibration; and could never climb ladders or be exposed to unprotected heights. (AR 68–69.) The VE testified that this individual could perform Plaintiff's past work of receptionist as per the DOT, and could also perform other sedentary, unskilled work as an order clerk, DOT code 209.567-014; an appointment clerk, DOT code 237.367-010; and a charge clerk, DOT code 205.367-014. (AR 69–70.)

The ALJ then proposed a third hypothetical, assuming the same individual in the second hypothetical but the individual had the additional limitation of lifting and carrying 10 pounds occasionally. (AR 70.) The VE testified that there would be no change to her previous answer. (AR 70–71.) When asked by the ALJ to assume that person in the third hypothetical had the additional limitation that she would have the ability to alternate between sitting and standing every 30 minutes, the VE testified that her answer would not change. (AR 71.) The ALJ posed a fifth hypothetical based on the previous, fourth hypothetical, with the additional limitations that the person could occasionally use right hand controls, handle and reach overhead with her right hand, and frequently handle and reach overhead with her left hand. (AR 71–72.) The VE testified there would be no work that the person could perform. (AR 72.)

Plaintiff's counsel then asked the VE to consider a person of Plaintiff's age, education, and with her past jobs, and to assume that such person would limited to lifting and carrying 10

pounds; standing and/or walking less than four hours in an eight-hour workday; limited to sitting 15 minutes at a time; climbing, balancing, kneeling, crawling, walking on uneven terrain occasionally; and never climbing ladders or working at heights. (AR 72–73.) The VE testified that that there would be no work that such individual could perform. (AR 73.)

**C.     The ALJ's Decision**

In a decision dated June 2, 2015, the ALJ found that Plaintiff was not disabled. (AR 10–19) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 12–19.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 28, 2009, the alleged onset date. (AR 12.) The ALJ found that Plaintiff had the severe impairments of (1) degenerative disc disease of the L3–L4 level (2) "L5–S1 moderate spondylosis of mid cervical"; and (3) "C4–C5, C5–C6 and C6–C7 osteophyte." (AR 13.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 13–15.) The ALJ determined that Plaintiff had the RFC

> to lift and carry 20 pounds occasionally, 10 pounds frequently, sit 6 hours, and stand and walk 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, and climb ladders, ropes, or scaffolds. In addition, she can occasionally reach overhead with her left upper extremity. (20 CFR [§§] 404.1567(b) and 416.967(b)).

(AR 15.)

The ALJ determined that, given her RFC, Plaintiff was not disabled because she was able to perform her past relevant work of receptionist and medical laboratory as performed per the DOT and as actually performed, and able to perform her past relevant work as phlebotomist and medical assistant as per the DOT. (AR 17–18.) The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the local and national economies, specifically sales attendant, office helper, and counter clerk. (AR 18–19.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible. (AR 17.)

//

9

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 6, 2016. (AR 1–4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III. SCOPE OF REVIEW

The Court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

### IV. APPLICABLE LAW

Social security claimants have the initial burden of proving disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5. An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ erred in her treatment of the medical opinion of examining physician Dr. Fabella. (*See* Doc. 15 at 8–10.) Defendant counters that the rejection of Dr. Fabella's opinion was not erroneous because that opinion was unsupported by and inconsistent with the medical evidence. (*See* Doc. 16 at 4–6.)

### A. Legal Standard

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical

11

findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, and those reasons must be supported by substantial evidence in the record. *Id.* at 830–31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation omitted).

"[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). If an ALJ opts to not give a treating or examining physician's opinion controlling weight, the ALJ must apply the factors set out in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6) in determining how much weight to give the opinion. These factors include: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, specialization, and other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (c)(3)–(6). The ALJ need not give a treating or examining physician any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

**B. The ALJ Did Not Err in Her Assessment of the Opinion of Consulting Examiner Dr. Fabella.**

Plaintiff was evaluated by Dr. Fabella on June 4, 2013. (AR 336–41.) His clinical findings included "mild to moderate paralumbar muscle spasm" in Plaintiff's cervical spine with

a "prominent decrease" in the range of motion, and pain with full abduction of her shoulders (AR 339.) With respect to Plaintiff's lower back, Dr. Fabella noted paralumbar muscle spasm and tenderness and a decrease in the range of motion. (AR 339.) Dr. Fabella's impression was that Plaintiff had "[s]evere cervicalgia, discogenic with associated osteoarthritis as well as evidence of central spinal stenosis by MRI"; "[l]ow back pain, discogenic and associated with osteoarthritis as well as, clinically with evidence of sciatica, but without MRI evidence of neural foraminal or lumbar spinal central stenosis"; and "[m]oderate, chronic and persistent asthma." (AR 340.) From this, Dr. Fabella concluded that Plaintiff was limited to (1) lifting and carrying less than 10 pounds frequently and 10 pounds occasionally; (2) walking or standing less than four hours of an eight-hour day; (3) sitting for 15 minutes at a time, after which a break is required; (4) climbing, balancing, kneeling, crawling occasionally; (5) occasionally walk on uneven terrain; (6) avoiding climbing ladders and working with heights; and (7) avoiding cold exposure. (AR 340.) He found no limitations on Plaintiff's hearing and seeing or manipulative activities. (AR 340.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Fabella's opinion is contradicted by the medical opinion evidence of Disability Determinations Service non-examining consultants Drs. Ocrant and Bullard, who concluded that Plaintiff could (1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; (4) perform limited pushing/pulling with the upper extremities; (5) occasionally climb, balance, stoop, kneel, crouch, and crawl; and (6) engage in limited right and left overhead reaching, but unlimited handling, fingering, and feeling. (AR 82–83, 94–95, 108–110.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Fabella's opinion.

In reviewing the medical evidence and rejecting Dr. Fabella's opinion, the ALJ stated that she
> give[s] other weight to this opinion because it is too restrictive based on the objective evidence. Although Dr. Fabella reported slow gait and decreased ranges of motion in the neck and back, [Plaintiff's] balance was preserved; she had full range of motion in her shoulders, and full motor strength in all extremities.

13

(AR 16.) An ALJ may properly discount an examining physician's opinion that is not supported by the medical record. *See Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). As the ALJ noted, although Dr. Fabella reported slow gait and decreased ranges of motion in Plaintiff's neck and back during his examination, he also found that Plaintiff's balance was preserved, that she had full range of motion in her shoulders, and that she had full motor strength in all of her extremities. (AR 16, 338–340.) Plaintiff had normal range of motion in her hips and knees and her straight leg raising test was negative. (AR 339.)

The ALJ further noted that the more recent objective medical testing of Plaintiff's lumbar spine CT scan showed only moderate osteopenia, satisfactory alignment of the lumbar vertebral bodies, and no lumbar fracture or dislocation. (AR 16, 424.) Despite Plaintiff's subjective complaints[6], she had consistently normal physical examinations on a monthly basis from January to October 2014. (AR 498–500, 502–504, 506, 508, 512, 514, 516, 518–19.) As the ALJ pointed out, Plaintiff "received little and only conservative treatment" for her neck and back pain, and her pain was reported to be controlled with medication on multiple occasions.[7] (AR 16, 17, 361, 358, 355 (reporting "[n]o back pain"), 518–19 (reporting that Neurontin was helping her cope with the pain).) Plaintiff was not prescribed an assistive device or hospitalized due to her alleged impairments, and no surgery was recommended. (AR 17.) Finally, although they do not and cannot "by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," *Revels v.*

---

[6] The ALJ discounted Plaintiff's credibility in this case, relying in part on the objective medical evidence to find that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (AR 16–17.) Plaintiff has not adequately challenged the sufficiency of the evidence supporting the ALJ's adverse credibility finding in this case or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

[7] "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to medication).

14

*Berryhill*, 874 F.3d 648, 664 (9th Cir. 2017) (quoting *Lester*, 81 F.3d at 831), the state physicians' opinions, relying on the same medical evidence as that relied upon by Dr. Fabella, fail to support Dr. Fabella's opined limitations. (*See* AR 16.)

In view of the above, the Court finds that the ALJ provided specific, legitimate reasons supported by substantial evidence for discounting Dr. Fabella's opinion that Plaintiff is limited to (1) lifting and carrying less than 10 pounds frequently and 10 pounds occasionally, (2) walking or standing less than four hours of an eight-hour day, (3) sitting for 15 minutes at a time, (4) occasionally climbing, balancing, kneeling, crawling, and walking on uneven terrain, and (5) avoiding climbing ladders, working with heights, and cold exposure, on grounds that the opinion was not supported by the objective medical evidence, including Dr. Fabella's own findings. *See Valentine*, 574 F.3d at 692–93 (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was inconsistent with his own examination and notes of claimant); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tonapetyan*, 242 F.3d at 1149 (finding that the ALJ properly rejected the opinion of a treating physician since it was not supported by treatment notes or objective medical findings); *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (ALJ properly rejected medical opinion where doctor's opinion was contradicted by his own contemporaneous findings); *Teleten v. Colvin*, No. 2:14-CV-2140-EFB, 2016 WL 1267989, at *5–6 (E.D. Cal. Mar. 31, 2016) ("An ALJ may reject a treating physician's opinion that is inconsistent with other medical evidence, including the physician's own treatment notes.") (citing *Tommasetti*, 533 F.3d at 1041; *Bayliss*, 427 F.3d at 1216); *Khounesavatdy v. Astrue*, 549 F. Supp. 2d 1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's

opinion.") (citing *Johnson*, 60 F.3d at 1432–33). To the extent that Plaintiff suggests Dr. Fabella's examination notes are actually consistent with the limitations found by Dr. Fabella (*see* Doc. 15 at 9), this Court will not second guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences that are more favorable to Plaintiff. *See Robbins*, 466 F.3d at 882 (citation omitted).

## VI. CONCLUSION AND ORDER

After consideration of the Plaintiff's brief and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **March 2, 2018**　　　　　　　　　　　　/s/ *Sheila K. Oberto*
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE